IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOEL J. MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3747 |
| | § | |
| TX. C.C., INC. d/b/a TEXAS LAND & | § | |
| CATTLE COMPANY STEAKHOUSE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

In this suit filed under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., the defendant employer, TX. C.C., Inc., has moved to dismiss or to stay the litigation based on a binding arbitration agreement with the plaintiff employee and compel arbitration. (Docket Entry No. 5). Plaintiff Joel J. Martinez has responded, arguing that the agreement is unenforceable as illusory. Based on a careful review of the pleadings, the motion and response, the parties' submissions, and the applicable law, this court grants the motion to dismiss. The reasons are set out below.

**I.   Background**

When Martinez became an employee of TX. C.C., he signed an agreement that contained the following language:

> I understand that the company has a binding arbitration policy and that any controversies concerning the application, terms, conditions, or scope of my employment with the Company will be handled in Arbitration, rather than a court of law. Such

>controversies include but are not limited to other benefit programs; claims regarding compensation or breach of contract tort claims; wrongful termination; sexual harassment or discrimination based on race, sex, age, religion, national origin, medical condition or disability; or claims for violating any other federal, state, or local governmental law, statute or regulation. I understand that if I am hired, I will be obligated to familiarize myself with the specific terms and conditions of the arbitration policy.

(Docket Entry No. 5, Attch. 1).

The binding arbitration policy (the "Policy") was described, in writing, at length. If an internal problem-resolution process failed, arbitration was required for "[p]roblems, disputes, or claims involving legally protected rights or statutory laws not resolved through the . . . problem resolution steps." (*Id.*, Ex. 2). The Policy continued:

> Problems, disputes, or claims involving legally protected rights or statutory laws not resolved through the preceding problem resolution steps are subject to final and binding arbitration. The arbitration proceeding will be administered by the American Arbitration Association and conducted under the National Rules for the Resolution of Employment of the American Arbitration Association. The decision or award of the Arbitrator made under these rules is exclusive, final and binding on both parties, their beneficiaries, executors, administrators, successors and assigns.
>
> . . . .
>
> A. Until revoked by Sponsor pursuant to this Policy, this Policy applies to and binds TXCC, each Employee who is in the employment of TXCC on or after the effective date of this Policy, and the heirs, beneficiaries, and assigns of any such person all such persons shall be deemed Party to the Policy.

2

    B.    Except as provided for herein, this Policy applies to any legal or equitable claim, demand or controversy, in tort, in contract, under statute, or alleging violation of any legal obligation, between persons bound by the Policy, which relates to, arises from, concerns or involves in any way:

        1.    this Policy;

        2.    the employment of an Employee, including the terms, conditions, or termination of such employment;

        3.    employee benefits or incidents of employment with TXCC or

        4.    any other matter related to the relationship between the Employee and TXCC including, by way of example and without limitation, allegations of discrimination based on race, sex, religion, national origin or disability; sexual harassment; occupational injury; wrongful discharge; defamation; infliction of emotional distress; or status, claim, or membership with regard to any employment benefit plan.

    C.    Notwithstanding anything to the contrary in this Policy, the Policy does not apply to claims for unemployment compensation benefits.

(*Id.*).

The Policy specifically addressed the application of amendments to the Policy related rules, and the right to terminate the Policy or rules. It stated:

    5.    Amendment

        A.    This Policy may be amended by Sponsor at any time. However, no amendment shall apply to an Issue of which Sponsor had actual notice on the date of amendment.

      B.      Sponsor shall adopt, and may amend the Rules at any time. However, no amendment will be effective:

           1.      until notice of the amendment is served on AAA, or

           2.      as to a Dispute of which Sponsor had actual notice (by notice of intent to arbitrate or otherwise) on the date of amendment.

6.      Termination

This Policy may be terminated by Sponsor at any time. However, termination shall not be effective:

      A.      until 10 days after notice of termination is given to Employees or

      B.      as to Disputes which arose prior to the date of termination.

Plaintiff contends that because the Policy provides that the employer may unilaterally modify the arbitration agreement, it is illusory and unenforceable, citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) and *In re Halliburton Co.*, 80 S.W.2d 566 (Tex. 2002).

**B.    Analysis**

"Courts adjudicating a motion to compel arbitration engage in a two-step process." *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). The first step is to determine if the parties agreed to arbitrate the dispute. *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The second step is to determine "'whether legal constraints external to the parties' agreement

foreclose[ ]'" arbitration of the claims. *Hadnot*, 344 F.3d at 476 (quoting *Mitsubishi Motors*, 473 U.S. at 628). Whether the parties agreed to arbitrate is determined on the basis of "ordinary state-law principles that govern the formation of contracts." *Id*. at 476 n.2 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Martinez asserts that the Policy is invalid as illusory under Texas law because it permits modification or termination at any time. Texas's highest court has recently addressed this issue. In *In re Halliburton*, 80 S.W.3d 566 (Tex. 2002), the employer notified employees of a new alternative dispute resolution program that required both the employer and the employees to submit all employment-related disputes to binding arbitration. *Id*. at 568. The terms included the employer's right to modify or discontinue the program, but also required the employer to give its employees notice of any changes and stated that any amendments would apply only prospectively. The language stated that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment" *Id.* at 569–70. The language also provided that "termination [of the Program] shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id*. at 570. The Texas Supreme Court held that because the employer could not "avoid its promise to arbitrate by amending the provision or terminating it altogether," the provision was not illusory. *Id.*

The language in the present case is similar. The Policy allowed the employer to amend at any time, but stated that "no amendment shall apply to an Issue of which Sponsor [TX. C.C.] had actual notice on the date of amendment." (Docket Entry No. 5, Ex. 2).

Similarly, the Sponsor could amend the rules at any time, but no amendment can be effective "until notice of the amendment is served" on the American Arbitration Association or "as to a Dispute of which Sponsor had actual notice (by notice of intent to arbitrate or otherwise) on the date of amendment." As to termination, the Policy allowed the Sponsor to terminate it at any time, but provided that termination would not be effective "until 10 days after reasonable notice of termination is given to Employees" or "as to Disputes which arose prior to the date of termination." (*Id.*). The Policy language at issue here, like the language the Texas Supreme Court considered in *Halliburton,* allows the employer to modify or discontinue the arbitration program and rules, but states that any amendment to the rules would apply only prospectively and termination of the Policy would apply only prospectively and after notice to the employees.

Martinez argues that, unlike the language in *Halliburton*, the employer is not required to give notice to the employee of changes to the arbitration rules and policy, although any changes are prospective only and do not apply to known disputes. The Policy, however, expressly stated that the employees were required to familiarize themselves with the specific terms and conditions of the arbitration policy, which was available from the "Director of People," and in the "manager's handbook," which was available in the "restaurant office to all employees." The "Policy" was defined to include amendments that might be made from time to time. The Policy made the amendments available in the same way as the specific terms of the Policy. Martinez has not argued that this manner of providing notice of the Policy terms to the employees made it invalid. There is no basis to find that this method of

notice makes the Policy provisions on amendments invalid. Under *Halliburton*, the terms of the Policy are not illusory because the employer's right to modify or terminate the Policy is limited by express contract provisions and does not allow the employer to avoid its promise to arbitrate. *Halliburton*, 80 S.W.3d at 569–70.

The Supreme Court's opinion in *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), is not to the contrary. In that case, the court did not reach the question because six of the nine justices found the agreement ambiguous and remanded. The dispute resolution policy at issue in *Davidson*, like the policy involved in *Halliburton*, included mutual promises to submit disputes to arbitration. The one-page agreement also provided: "The 'Company' reserves the right to unilaterally abolish or modify any personnel policy without prior notice." *Id.* at 226. The Court concluded that it could not "give the arbitration agreement a definite or certain legal meaning because it is unclear whether Davidson's unrestricted right to 'unilaterally abolish or modify any personnel policies' gives it the right to terminate the arbitration agreement without notice." *Id.* at 229. Unable to determine whether the employer's unilateral right to terminate "personnel policies" applied to the agreement to arbitrate, the Court concluded that the arbitration agreement was ambiguous. *Id.* at 232. There is no similar inconsistency or ambiguity in the Policy at issue in this case.

Martinez also asserts that the Policy is invalid because it does not require a neutral arbitrator. The Policy states that arbitration proceedings will be administered by the American Arbitration Association, under its national rules, and subject to the Federal Arbitration Act. The rules of the AAA, and the Act, all require impartial arbitration. This

7

argument is not persuasive.

Under section 3 of the Federal Arbitration Act, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration . . . ." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The Fifth Circuit has interpreted this language to mean only that the district court cannot deny a stay when one is properly requested. *Id.* "This rule, however, was not intended to limit dismissal of a case in the proper circumstances." *Id.* If all the issues raised before the district court are arbitrable, dismissal of the case is appropriate. *Id.*

### III.   Conclusion

The motion to dismiss is granted in order to permit the arbitration to proceed.

SIGNED on January 4, 2006, at Houston, Texas.

_____
                    Lee H. Rosenthal
                    United States District Judge